UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| VICTOR JOSIAH PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:17-cv-03154-BP |
| | ) | |
| BRAD COLE, | ) | |
| in his official and individual capacity | ) | |
| Serve at: | ) | |
| 110 W. Elm St. #70 | ) | |
| Ozark, MO 65721 | ) | |
| | ) | |
| JOHN DOE, | ) | |
| in his individual capacity | ) | |
| 110 W. Elm St. #70 | ) | |
| Ozark, MO 65721 | ) | |
| | ) | |
| PAUL GLYNN, | ) | |
| in his individual capacity | ) | |
| 515 Hugh Ave. | ) | |
| Sparta, MO 65753 | ) | |
| | ) | |
| ADVANCED CORRECTIONAL | ) | |
| HEALTHCARE, INC. | ) | |
| Serve at: | ) | |
| CT Corporation System | ) | |
| 120 South Clayton Central Ave. | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| KAREN DOERRY | ) | |
| 500 Quail Trail | ) | |
| Warrensburg, MO 64093 | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Victor Josiah Parker, by and through the undersigned counsel, and for his First Amended Complaint against Defendants Brad Cole ("Cole"), in his official and individual capacity; John Doe ("Doe"), in his individual capacity; Dr. Paul Glynn ("Glynn"), in

his individual capacity; Advanced Correctional Healthcare, Inc., ("ACH"), and Dr. Karen Doerry ("Doerry"), in her individual capacity, and, states as follows:

## JURISDICTION AND VENUE

1. This action is brought under 42 U.S.C. §1983 to remedy the deprivation of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

3. The events and omissions giving rise to this claim occurred in the Western District of Missouri and venue is therefore proper in this Court under 28 U.S.C. §1391(b).

## PARTIES:

4. Plaintiff Victor Josiah Parker is a citizen and resident of the State of Missouri. He is currently confined as a pretrial detainee at the Christian County Jail.

5. Christian County Sheriff's Office has, at all times relevant to this lawsuit, had management and administrative responsibilities for the Christian County Jail, a correctional facility located at 110 W. Elm Street, Suite 70, Ozark, MO 65721, in Christian County, Missouri.

6. Defendant Cole is sued in his individual and official capacity, and has, at all times relevant to this lawsuit, served as the Sheriff of Christian County, Missouri, with ultimate responsibility for administration of the Christian County Jail, as well as ultimate responsibility for policymaking, training and oversight of the staff of the Christian County Jail.

7. Defendant Glynn is sued in his individual capacity as a doctor for the Christian County Jail. Upon information and belief, until December 31, 2016, Defendant Glynn had responsibilities that include assessing inmates' requests for medical services and providing such services to inmates at the Christian County Jail.

8. Defendant Advanced Correctional Healthcare, Inc. ("ACH") is a private corporation. Upon information and belief, effective January 1, 2017, and continuing through the

present, Defendant ACH has had a contract with the Christian County Jail to provide staff physicians and nurses who attend to the health and medical needs of inmates and pretrial detainees at the Christian County Jail.

9. Defendant Doerry is sued in her individual capacity and, at all times relevant to this lawsuit, has been employed by or is a contractor with Defendant ACH, having responsibilities that include assessing inmates' requests for medical services and providing such services to inmates at the Christian County Jail.

10. Defendant John Doe is sued in his individual capacity. Upon information and belief, Defendant Doe is a correctional officer employed by the Christian County Sheriff's Office who was working in the B Pod of the Christian County Jail on the afternoon of September 23, 2016.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

11. On September 2, 2016, Plaintiff was incarcerated at the Christian County Jail as a pretrial detainee.

12. On the afternoon of September 23, 2016, all of the inmates and pretrial detainees incarcerated in Pod B, including Plaintiff, were let out of their cells to receive items they had ordered from the commissary.

13. Pod B consists of eight cells of two prisoners each. Additional inmates sleep on cots in the day room immediately outside the cells due to overcrowding.

14. To distribute the commissary items, one officer, Defendant Doe, entered the day room and stacked the items on a long metal table. Defendant Doe called each inmate's name, then called out the name and quantity of each item while the inmate collected and placed the items in a basket. Each inmate would then return to his cell to store the items.

15. While each inmate collected his items, the other inmates hovered over the table, watching what items each inmate received.

16. Plaintiff purchased $124.80 worth of items from the commissary, including necessary toiletry items. The money in his commissary account came from his last paycheck as a stucco worker before he was arrested.

17. After Plaintiff purchased his items, he walked toward his cell. Three inmates, who were not Plaintiff's cellmates, followed Plaintiff.

18. Before Plaintiff could lock his cell door behind him, the three inmates entered his cell. The three inmates demanded that Plaintiff give them his commissary items. The inmates also demanded that Plaintiff pay them $30 per week for every week thereafter. The inmates threatened that if Plaintiff did not comply with their demands, they would beat him up.

19. Plaintiff refused the demands of the three inmates. The three inmates viciously attacked Plaintiff, knocking him unconscious.

20. While Plaintiff was unconscious, the three inmates continued to kick, punch, and stomp on Plaintiff's face, hands, torso, and feet.

21. One inmate also inflicted a four inch laceration on the left side of Plaintiff's face with a makeshift knife commonly known as a shank. The laceration extended from the inside corner of Plaintiff's left eye across his cheek toward his jawbone.

22. As a result of the beating, Plaintiff suffered bodily bruising, broken bones, and total loss of sight in his left eye.

23. The three inmates knocked out several of Plaintiff's original teeth, and both Plaintiff's partial upper and lower dentures. The three inmates then flushed Plaintiff's teeth and dentures down the toilet in Plaintiff's cell.

24. Defendant Doe observed the three inmates follow Plaintiff into his cell.

25. Defendant Doe knew the three inmates did not belong in Plaintiff's cell.

26. Defendant Doe knew that Plaintiff had just obtained a large order of commissary items.

27. Defendant Doe failed to question why the three inmates went into Plaintiff's cell.

28. Defendant Doe failed to check on Plaintiff or do anything to prevent this violent assault.

29. During the assault, Defendant Doe left the day room leaving the inmates unsupervised.

30. At some point while Plaintiff was unconscious, two of the assailants left Plaintiff's cell with all of Plaintiff's commissary items.

31. The remaining assailant slapped Plaintiff on the face to make him regain consciousness and demanded that Plaintiff clean himself up. The assailant told Plaintiff not to tell anyone what happened. Plaintiff promised he would clean himself up.

32. Plaintiff was bleeding profusely from his mouth and the laceration on his face. Plaintiff told the assailant to leave his cell, and pushed the cell door closed to lock it as the remaining assailant left.

33. Plaintiff then pushed the emergency call button in his cell to summon the guards.

34. Instead of coming to help Plaintiff, Defendant Doe electronically released the lock on Plaintiff's cell door. When the cell door is unlocked, it makes an audible buzzing sound. When the assailants heard the buzz from Plaintiff's cell door, they knew that Plaintiff had notified the guards of the attack.

35. In his injured state, Plaintiff tried to close and lock his cell door again to prevent the assailants from re-entering and continuing the attack.

36. Plaintiff again pressed the emergency call button and begged the guards over the intercom not to unlock his door again. Plaintiff stated that he had been attacked and asked for assistance.

37. Defendant Doe then placed Pod B on lockdown. Several minutes later, with Plaintiff still bleeding profusely, guards reached Plaintiff.

38. The guards then took Plaintiff to the jail nurse, who insisted that Plaintiff be taken to the hospital immediately.

39. Plaintiff was transported in an unmarked police car to Cox South Hospital in Springfield, Missouri.

40. The following morning, providers at Cox South Hospital conducted assessments of Plaintiff and treated the laceration on his face. Plaintiff was referred to a specialist for his left eye.

41. Three days later, an eye specialist diagnosed Plaintiff with posterior synechai, ruptured lens, traumatic irdodialysis, and total traumatic cataract of the left eye, among other complications.

42. At a follow-up visit, Plaintiff was told that his blindness is able to be repaired. However, despite still being totally blind in his left eye and experiencing continued significant pain, Plaintiff was told that his attack-induced blindness was not an emergency and that Plaintiff would have to seek further treatment at his own cost if and when he was released from custody.

43. Defendant Glynn met with Plaintiff multiple times to assess his medical condition. Defendant Glynn had actual knowledge of Plaintiff's serious medical conditions, and was deliberately indifferent to them by failing to provide treatment.

44. Defendants ACH and Dr. Doerry have also had responsibility for treating Plaintiff, and have actual knowledge of Plaintiff's serious medical conditions, and were deliberately indifferent to them by failing to provide treatment.

45. Christian County Sheriff's Office, acting through the individual defendants named herein, has adopted an unlawful "one-eye" policy, custom, or practice. In effect, Plaintiff has been told that as long as he has one good eye, he will be forced to continue to endure painful blindness in the other and then pay for the corrective surgery after he is released.

46. At all times relevant, Defendants were acting under color of state law.

47. From the time of the attack until the present, Plaintiff has had no vision in his left eye and still continues to suffer from chronic, severe pain in his left eye. In addition, in order to compensate for the lack of vision in his left eye, Plaintiff's vision in his right eye has deteriorated significantly.

48. Plaintiff has experienced, and continues to experience, post-traumatic stress disorder arising out of the assault. Plaintiff's inability to see out of his left eye causes him to experience paranoia and anxiety out of fear that he will be attacked again.

49. Plaintiff's inability to see out of his left eye leaves him unable to protect himself if he is attacked again. His inability to see out of his left eye also makes him more likely to either bump into other inmates – inadvertently angering them and prompting another attack – or run into walls or objects within the jail, accidentally causing further injury to himself or others.

50. Plaintiff has filed 88 Medical Service Requests ("MSR"), along with other informal requests for medical attention and additional grievances seeking care to remedy the effects of the attack.

51. Almost all of Plaintiff's MSRs and grievances have been summarily denied, even through all three required levels of appeals.

52. Plaintiff has had documentation relating to his grievances and requests for medical care disappear after searches of his cell.

53. Even simple remedies such as requests for an eye patch were denied.

54. Plaintiff has exhausted his administrative remedies available.

55. To the extent that Plaintiff has not exhausted his administrative remedies, additional attempts would be futile.

56. Defendants refused and continue to refuse to provide adequate treatment to Plaintiff for his left eye. As a result, Plaintiff is suffering from unnecessary and severe pain, and is at risk of further actual harm.

57. Defendants Cole, Glynn, Doerry, and ACH all denied Plaintiff sufficient medical evaluations and ongoing necessary medical treatment, indicating a custom or practice of denying adequate care.

58. Upon information and belief, Defendant Cole maintains an express policy which fails to provide sufficient medical evaluations and treatment to provide adequate medical treatment for inmates in his care.

59. Upon information and belief, Defendant Cole and the Christian County Jail have a widespread practice of failing to provide sufficient medical evaluations and treatment to provide

adequate medical treatment for inmates. This practice has become a custom of depriving inmates of the right to adequate healthcare within the correctional facility.

60. Upon information and belief, Defendant Cole is the final policymaking authority and decided to deny Plaintiff access to sufficient medical evaluations and treatment that would provide adequate healthcare.

61. Upon information and belief, Defendant Cole maintains an express policy which fails to properly and speedily respond to inmate emergencies.

62. Upon information and belief, Defendant Cole and the Christian County Jail have a widespread practice of failing to properly and speedily respond to inmate emergencies. This practice has become a custom of depriving inmates of the right to safety within the facility.

63. Upon information and belief, Defendant Cole is the final policymaking authority who has approved the practice of failing to properly and speedily respond to inmate emergencies.

64. In addition to the above-described injuries to and medical conditions of his eyes, Plaintiff sustained other serious injuries as a result of the beating he endured on September 23, 2016, including but not limited to broken bones, severe back pain, and dental injuries.

65. These other injuries were also left untreated and continue to cause Plaintiff significant pain.

66. Plaintiff's partial dentures were never replaced. Due to his lack of usable teeth, Plaintiff has difficulty eating and chewing without pain.

67. Plaintiff has requested simple items like an extra blanket to alleviate the effects of his back pain. Attempts to obtain treatment through medical requests and grievances for these injuries have also been denied.

9
SPH-2172041-5
Case 6:17-cv-03154-BP   Document 10   Filed 10/10/17   Page 9 of 19

## COUNT ONE:
## DECLARATORY JUDGMENT AND PROSCRIPTIVE INJUNCTION
## (AGAINST DEFENDANT COLE IN HIS OFFICIAL CAPACITY)

68. Plaintiff herein incorporates by reference all prior paragraphs.

69. Plaintiff continues to be in a significant amount of pain.

70. Plaintiff continues to be blind in his left eye. Plaintiff is in imminent danger of progressively worsening vision in his right eye, and irreparable blindness in his left eye.

71. Plaintiff's trial date in Christian County was originally set for September 25, 2017. Plaintiff was unable to adequately see witnesses or exhibits in preparation for that trial. Plaintiff's trial was continued temporarily in order for Plaintiff to seek relief from this Court.

72. Plaintiff is likely to succeed on the merits at trial in this action.

73. Plaintiff is likely to suffer irreparable harm, including but not limited to pain and possibly permanent blindness and inability to assist in his own defense at his criminal trial, if an injunction is not issued.

74. The harm to Plaintiff is greater than the harm to Cole, Christian County and/or the Christian County Sheriff's Office if this injunction is not issued.

75. Granting this injunction will serve the public interest.

WHEREFORE, Plaintiff prays for relief as follows:

    a. The Court determine and enter judgment declaring that the acts and omissions of Defendants, as set forth above, violate rights secured to Plaintiff by the Eighth and Fourteenth Amendment to the United States Constitution;

    b. Upon a hearing, the Court issue an injunction enjoining Defendant Cole and his employees, agents, and successors in office from refusing to provide and/or delaying the provision of necessary medical treatment to Plaintiff;

10
SPH-2172041-5
Case 6:17-cv-03154-BP   Document 10   Filed 10/10/17   Page 10 of 19

c. Reasonable attorney's fees and costs; and

    d. Such other relief as the Court may find just and proper.

### COUNT TWO:
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### (AGAINST DEFENDANTS COLE IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, GLYNN IN HIS INDIVIDUAL CAPACITY, DOERRY IN HER INDIVIDUAL CAPACITY, AND ACH)

76. Plaintiff hereby incorporates by reference all prior paragraphs.

77. Plaintiff's traumatic cataract, posterior synechiae, broken bones, severe back pain, and dental injuries constitute objectively serious medical needs and necessitate ongoing medical evaluation and treatment.

78. Defendants Cole, Glynn, Doerry, and ACH had actual knowledge of Plaintiff's traumatic cataract, posterior synechiae, broken bones, severe back pain, and dental injuries or have acted with deliberate indifference to the existence of such medical needs and information.

79. Plaintiff's 88 MSRs and additional grievances and requests for care provided abundant notice to all Defendants of the existence of pain, suffering, and need for medical attention.

80. Defendants Cole, Glynn, Doerry, and ACH had actual knowledge that Plaintiff faces a substantial risk of ongoing actual harm and unnecessary infliction of pain from his traumatic cataract, posterior synechiae, broken bones, severe back pain, and dental injuries, or have acted with deliberate indifference to such medical needs and information.

81. Defendants also have had actual knowledge, or have acted with deliberate indifference to the fact, that Plaintiff faces a substantial risk of actual harm from the physical limitations and chronic pain associated with the delineated conditions.

82. Defendants have a duty under the Eighth and Fourteenth Amendments to the United States Constitution to provide needed medical and dental care to pretrial detainees of the Christian County Jail, including the Plaintiff, in conformity with the standards for delivery of such medical care in the State of Missouri as a whole.

83. Defendants have failed to provide medical care to Plaintiff in conformity with the standard for delivery of such medical care in the State of Missouri as a whole, endangering Plaintiff's health and well-being.

84. Defendants have consciously and continually refused to take reasonable steps to address Plaintiff's traumatic cataract and posterior synechiae, resulting in total loss of vision in Plaintiff's left eye. This includes, but is not limited to, refusing to provide additional evaluation, care or treatment to Plaintiff based on facility customs, policies, or practices.

85. Defendants have also consciously refused to provide reasonable treatment for Plaintiff's severe and chronic pain related to his traumatic cataract and posterior synechiae.

86. Upon information and belief, Defendants have policies, customs, and/or have engaged in repeated, persistent and systematic actions, including but not limited to failing to properly treat Plaintiff's serious medical conditions, that have resulted in the infliction of injuries actionable under § 1983.

87. Upon information and belief, Defendants employ actors who represent such official policies or customs, and/or have engaged in repeated, persistent, and systematic actions; their actions therefore have also resulted in the infliction of injuries actionable under § 1983. Defendants authorized their subordinates' misconduct, consistent with such official policies, customs, and/or repeated, persistent, and systematic actions, in a manner that results in wanton and unnecessary infliction of pain upon inmates.

12
SPH-2172041-5
Case 6:17-cv-03154-BP   Document 10   Filed 10/10/17   Page 12 of 19

88. The ineffective treatment provided to Plaintiff per these policies and customs has resulted in continued discomfort and significant pain to Plaintiff.

89. Upon information and belief, knowing of the medical needs of Plaintiff, and with deliberate indifference to the inadequacies and deficiencies in the official policies and customs, medical facilities, staffing, and procedures at the Christian County Jail, Defendants have failed and neglected to establish and implement policies, practices, and procedures designed to ensure that Plaintiff receives medical treatment and care at the standards in the State of Missouri as a whole, or have adopted policies, practices, and procedures, which they knew, or reasonably should have known, would be ineffective in delivering medical treatment and care at such standards.

90. As a direct and proximate result of the above-described actions and omissions of Defendants and their deliberate indifference to Plaintiff's serious medical needs, Plaintiff has suffered injuries and damages as set forth herein.

91. The above-described actions and omissions have resulted in pain and suffering, discomfort, embarrassment, humiliation, and mental anguish.

92. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations under 42 U.S.C. § 1983.

93. Attorneys' fees and costs may be awarded in this action under 42 U.S.C. § 1988.

94. Defendants' conduct, acts, and omissions have been recklessly indifferent to Plaintiff's serious medical needs, thereby justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for relief as follows:

a. The Court determine and enter judgment declaring that the acts and omissions of Defendants, as set forth above, violate rights secured to Plaintiff by the Eighth and Fourteenth Amendment to the United States Constitution.

b. Compensatory damages that will fairly and adequately compensate Plaintiff for Plaintiff's damages;

c. Punitive damages in the amount that will fairly punish Defendants for their conduct;

d. Reasonable attorney's fees and costs; and

e. Such other relief as the Court may find just and proper.

## COUNT THREE:
## FAILURE TO TRAIN
## (AGAINST DEFENDANT COLE IN HIS OFFICIAL AND INDIVIDUAL CAPACITY)

95. Plaintiff hereby incorporates by reference all prior paragraphs.

96. Defendant Cole, knowing of the medical needs of Plaintiff, has a duty under the Eighth and Fourteenth Amendments to the United States Constitution to instruct, supervise, and train his employees and agents to ensure that the delivery of medical care to Plaintiff is consistent with the standards of medical care in the State of Missouri as a whole and that inmates are protected.

97. Defendant Cole has a duty under the Eighth and Fourteenth Amendments to the United States Constitution to instruct, supervise, and train his employees and agents on monitoring detainee interaction to ensure individuals in the Christian County Jail are not needlessly injured.

98. Upon information and belief, Defendant Cole has failed to instruct, supervise and/or train his employees and agents in a manner that ensures the delivery of medical care to

Plaintiff which is consistent with the standards of medical care in the State of Missouri as a whole.

99. The failure to provide sufficient medical evaluations, recognize injuries, and offer ongoing care demonstrates a lack of sufficient training on the delivery of medical care.

100. Upon information and belief, Defendant Cole has failed to instruct, supervise and/or train his employees and agents in a manner that ensures the safety of inmates in the Christian County Jail.

101. The practice of allowing a large group of inmates to observe and access the distribution of commissary items without appropriate supervision demonstrates the failure to train in a manner that ensures the safety of inmates.

102. Defendant Doe's actions in failing to observe and/or inspect Plaintiff's cell after his receipt of a large amount of items and allowing other inmates to follow him back to the cell demonstrate a lack of sufficient training to ensure the safety of inmates.

103. Defendant Doe's failure to respond promptly when Plaintiff pushed the emergency call button demonstrates a lack of sufficient training to ensure the safety of inmates.

104. Defendant Doe's decision to release the lock on the cell door when Plaintiff pushed the emergency call button demonstrates a lack of sufficient training to ensure the safety of inmates.

105. Defendants' actions and omissions have been committed under color of law.

106. As a direct and proximate result of the above-described actions and omissions of Defendants and their deliberate indifference to Plaintiff's serious medical and safety needs, Plaintiff has suffered injuries and damages as set forth herein from other inmates and from ongoing medical conditions.

107. The above-described actions and omissions have resulted in pain and suffering, discomfort, embarrassment, humiliation, mental anguish.

108. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations under 42 U.S.C. § 1983.

109. Attorneys' fees and costs may be awarded in this action under 42 U.S.C. § 1988.

110. Defendants' conduct, acts, and omissions have been recklessly indifferent to Plaintiff's serious medical needs, thereby justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for relief as follows:

   a. The Court determine and enter judgment declaring that the acts and omissions of Defendants, as set forth above, violate rights secured to Plaintiff by the Eighth and Fourteenth Amendment to the United States Constitution.

   b. Compensatory damages that will fairly and adequately compensate Plaintiff for Plaintiff's damages;

   c. Punitive damages in the amount that will fairly punish Defendants for their conduct;

   d. Reasonable attorney's fees and costs; and

   e. Such other relief as the Court may find just and proper.

## COUNT FOUR
## FAILURE TO PROTECT
## (AGAINST DEFENDANT COLE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND DEFENDANT DOE)

111. Plaintiff hereby incorporates by reference all prior paragraphs.

112. Under the Eighth and Fourteenth Amendments to the United States Constitution, Defendants Cole and Doe have a duty to protect inmates, including Plaintiff, from violence at the hands of other inmates.

113. Plaintiff experienced actual harm from other inmates and was at substantial risk of further serious harm through Defendants Cole and Doe's serious dereliction of the responsibility to ensure a safe environment in monitoring the cells and other inmates.

114. Defendants Cole and Doe had actual knowledge that allowing all the prisoners in a pod out of their cells to observe what other prisoners received from the commissary created a substantial risk of serious harm to all prisoners, including Plaintiff, resulting from fights over commissary items; or Defendants acted with deliberate indifference to such substantial risk.

115. Defendants Cole and Doe had actual knowledge that releasing the lock on Plaintiff's cell door when he rang the emergency call button created a substantial risk of harm to Plaintiff; or Defendants acted with deliberate indifference to such substantial risk.

116. Defendants Cole and Doe had actual knowledge that delaying to respond when an inmate pushed the emergency call button created a substantial risk of harm to the inmate; or Defendants acted with deliberate indifference to such substantial risk.

117. With knowledge of such substantial risk of harm, Defendants acted unreasonably in the face of this risk by continuing to allow all prisoners out of their cells to observe what other prisoners received from the commissary, and by not ensuring that each prisoner was allowed to safely return the items to his cell.

118. Further, Defendant Doe had actual knowledge that Plaintiff was at a substantial risk from harm when Defendant Doe observed three violent inmates, none of whom were Plaintiff's cell mate, follow Defendant into his cell after Plaintiff received more than $100 worth of commissary items.

119. Defendant Doe, with knowledge of the substantial risk of harm, acted unreasonably in the face of this risk by failing to take any action to prevent the violent assault upon Plaintiff that occurred.

120. Defendant Doe, with knowledge of the substantial risk of harm, acted unreasonably in the face of this risk by unlocking Plaintiff's cell door when Plaintiff pushed the emergency call button and further acted unreasonably by failing to promptly respond to the emergency call button.

121. Defendants' actions and omissions have been committed under color of law.

122. As a direct and proximate result of the above-described actions and omissions of Defendants and their failure to protect, Plaintiff has suffered injuries and damages as set forth herein.

123. During the above-described assault, Plaintiff suffered severe lacerations to his face, fractured ribs, fractured fingers and toes, and total loss of sight in his left eye. Further, the assailants knocked out several of Plaintiff's teeth, as well as his partial dentures, which assailants flushed down the toilet in Plaintiff's cell.

124. The above-described actions and omissions by Defendants have resulted in pain and suffering, discomfort, embarrassment, humiliation, and mental anguish.

125. Plaintiff may seek remedies for the injuries and damages caused by such Constitutional violations under 42 U.S.C. § 1983.

126. Attorneys' fees and costs may be awarded in this action under 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for the Order of this Court awarding:

    a. Compensatory damages that will fairly and adequately compensate Plaintiff for Plaintiff's damages

b. Punitive damages in an amount that will fairly punish Defendants for their conduct;

   c. Reasonable attorney's fees and costs; and

   d. Such other relief as the Court may find just and proper.

Further, Plaintiff requests this Court enter judgment in favor of him for injunctive relief; damages in an amount to be determined by the Court, court costs herein incurred; for his reasonable attorneys' fees incurred in prosecution of this action; and for any additional relief as this Court deems just and proper.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ J. Michael Bridges*
J. Michael Bridges                #41549
Ashley L. Norgard                 #66502
901 E. St. Louis Street, Suite 1800
Springfield, Missouri 65806
Telephone: (417) 268-4000
Facsimile: (417) 268-4040
E-mail: Michael.bridges@huschblackwell.com
        Ashley.norgard@huschblackwell.com

***Attorneys for Plaintiff Victor Josiah Parker***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed via the Court's CM/ECF system this 10th day of October 2017:

/s/ *J. Michael Bridges*